UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAWN SEEVER,
DEBORAH SEEVER,
VERONICA RODRIGUEZ,
PEGGY ROWLAND, on behalf of themselves and
all other employees similarly situated,
JENNIFER GEORGE,
RACHEL ALLEN,
DAVID OGDENSKI,
DENISE McHUGH,
HEATHER ROBERTS,
JOSEPH LAMONT FLETH, SR.,
LYNDA SEEVER, on behalf of
Deborah Seever,

                            Plaintiffs,

                                                        <u>DECISION AND ORDER</u>

                 v.                               02-CV-6580L

CARROLS CORPORATION,

                            Defendant.
_____

       Plaintiffs Dawn Seever, Deborah Seever, Veronica Rodriguez, Margaret Rowland, Jennifer

Bentley-George, Rachel Allen, Denise McHugh, Heather Roberts, David Ogdenski and Joseph Fleth

are a group of persons formerly employed at a Burger King restaurant owned and operated by

defendant Carrols Corp. ("Carrols").  Plaintiffs instituted this action alleging that Carrols violated

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law

("Labor Law") §190 et seq. and §650 et seq., by failing to pay wages to which the plaintiffs were

legally entitled.  Plaintiffs have moved for conditional certification as an FLSA collective action and for discovery and notice to a nationwide class, and a variety of other discovery-related motions are pending.

The complaint alleges that Carrols, as the owner and operator of the Burger King restaurant where the plaintiffs worked, has routinely failed to properly compensate the plaintiffs for certain work-time and overtime.  *See* 29 U.S.C. § 207(a)(1).  Specifically, plaintiffs allege that Carrols has failed to compensate its employees for tasks performed off-the-clock, as well as for time spent undergoing training, orientation, and attending manager's meetings.  To paraphrase Burger King's seminal slogan, plaintiffs initiated this action seeking to have it "their way, right away," in the form of compensatory and statutory liquidated damages,  and attorney's fees.

Carrols has moved to dismiss all of the claims asserted by plaintiffs Heather Roberts and Joseph Fleth. Carrols has also moved for summary judgment against the remaining plaintiffs (referred to hereafter as "plaintiffs")[1] on their claims pursuant to the FLSA and New York Labor Law,[2] with the exception of plaintiffs' claims concerning alleged nonpayment or underpayment for attendance at orientations and management meetings.

---

[1]  Although Carrols represented at the hearing on these motions that David Ogdenski has similarly failed to participate in discovery or otherwise cooperate in this action, no formal motion has been made to dismiss his claims and thus Ogdenski is the only plaintiff who is not the subject of any of the summary judgment motions addressed herein.

[2]  The Court notes that the portions of New York Labor Law relied upon by plaintiffs do not appreciably diverge from the requirements of the FLSA: hence, although the following analysis refers primarily to federal law, it applies equally to the plaintiffs' state law claims.  *See Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 215 (N.D.N.Y. 2002); *Bandhan v. Lab. Corp. of America*, 2002 U.S. Dist. LEXIS 25972 at *20 n. 2 (S.D.N.Y. 2002).  *See generally Brown v. Tomcat Electrical Security, Inc.*, 2007 U.S. Dist. LEXIS 63542 at *19 (E.D.N.Y. 2007).

For the reasons that follow, Carrols' motion for summary judgment is granted, and plaintiffs' motion for collective action certification is denied.

**DISCUSSION**

I.     **Facts**

Defendant Carrols is a Burger King franchisee which owns nearly three hundred and fifty (350) Burger King restaurants in thirteen states.  Plaintiffs are a group of former employees of one of those restaurants, Unit 416, which is now closed, located in the Irondequoit Mall, which is, for the most part, closed as well.

Unit 416 was managed by Restaurant Manager Tami Falkner, who was responsible for all on-site operations, subject to Carrols' policies.  When Falkner was not on duty, Assistant Managers of varying levels, including plaintiffs Dawn and Deborah Seever, were responsible to oversee and control day-to-day operations, while the Restaurant Manager remained on call.  In their Assistant Manager III position, Dawn and Deborah Seever were responsible to supervise employee shifts, assist with recruitment, training, and development of employees, execute administrative tasks, and maintain time records.  That task required them to ensure that appropriate corrections were made to the time cards of the employees on the shifts they supervised.

Employees supervised by the Seevers in this capacity included "crew persons" responsible for such tasks as preparing and serving food and cleaning the premises, as well as Team Leaders such as plaintiff Veronica Rodriguez, and Shift Supervisors such as plaintiff Denise McHugh, the latter

of whom would be responsible for running the restaurant in the absence of a Restaurant Manager or Assistant Manager.

Carrols' has developed standardized written employment policies, including wage and hour policies, which the parties agree comply with all applicable federal and state regulations with respect to compensation for time worked, including overtime. Carrols' Restaurant Training Systems Manual requires that all managers ensure that employees are properly paid for time worked, including overtime, and Carrols trains all of its employees concerning its wage and hour policies. Promotional positions, including those of Team Leader, Shift Supervisor, Assistant Manager and Restaurant Manager, require increasingly intensive training on wage and hour requirements and compliance, and Assistant Managers and Restaurant Managers are required to pass tests concerning the requirements of the labor law in the state where they work.

Carrols' written policies also include a grievance procedure, set forth in its Orientation Handbook, which provides for the lodging of formal written complaints to Carrols management concerning any of Carrols' policies and procedures.

Crew persons wishing to seek promotional positions, which generally receive a higher wage and other benefits, may request access to study materials from their manager, engage in self-study and demonstrate that they have sufficiently mastered the responsibilities of the sought-after position. Some promotional training materials, such as certain videos and written texts, are not permitted to be removed from the premises and must therefore be reviewed at the store location.

The Carrols Burger King restaurant at which the plaintiffs were employed, Unit 416, was one of only 9 restaurants that were located in shopping malls. Due to its location, Unit 416 received less

business than its free-standing counterparts and also lost business over time as the shopping mall in which it was situated declined. Eventually, this resulted in a limited number of managers and a diminishing number of staff members. As such, the Restaurant Manager and two Assistant Manager IIIs, twin sisters Dawn and Deborah Seever, were assigned to manage Unit 416. Although a restaurant typically has one Assistant Manager III, if any, Carrols accommodated the Seevers' request to work in the same unit.

During their time as Assistant Manager IIIs at Unit 416, the Seevers had the authority to make time corrections adjusting the hours reflected on their timesheets, as well as those of the employees whom they supervised. Dawn Seever testified that she made regular corrections to her own time, as well as that of crew persons she supervised, to reflect time they spent on various tasks, including work performed off-the-clock, and that she was compensated for all of the time she entered.[3]

Although Dawn Seever admitted that she was familiar with Carrol's written policies concerning payment for time worked, including overtime, and also reported off-the-clock work on her own timesheets, Seever testified that she failed to compensate the employees she supervised for certain off-the-clock work, such as orientation, and also instructed crew members to perform particular tasks off-the-clock, even as she was assigning copious amounts of unauthorized overtime to herself, for which she was duly paid. Seever testified that she knew that her failure to record all

---

[3] Plaintiff Deborah Seever died subsequent to the filing of this action, but before she could be deposed or otherwise participate meaningfully in discovery. As such, her claims are largely unspecified and/or unsupported. Her mother, Lynda Seever, has been substituted for her pursuant to Fed. R. Civ. Proc. 25(a)(1). (Dkt. #97)

of the work time of the employees she supervised violated Carrols' written wage and hour policies, but claims that she did so at the behest of the Restaurant Manager, Tami Falkner.

On March 20, 2001, Chris Pignone, District Supervisor for Unit 416, reprimanded Dawn and Deborah Seever for assigning themselves excessive amounts of overtime for tasks that could normally be completed within a forty-hour week. Carrols also believed that the Seevers had been artificially inflating the number of hours they reported, including entering time corrections to reflect earlier punch-in times and/or later punch-out times, and punching in and out to falsely reflect one another's presence at the store while absent. Pignone instructed the Seevers to obtain his permission before working additional overtime. Dawn Seever admits that she deliberately disobeyed Pignone's instructions, and thereafter continued to unilaterally assign herself unauthorized overtime, which she reported and for which she was paid.

On May 16, 2002, Carrols placed Dawn Seever on probation, citing Unit 416's poor performance and Seever's poor attitude, and indicating that the performance of Unit 416 needed to improve within two months. The Seevers continued to assign themselves unauthorized overtime even as Unit 416 continued to decline, and on July 16, 2002, District Director Sheila Fordham met with Dawn and Deborah Seever and informed them that their performance was unacceptable, and that they were being terminated for cause.

On July 26, 2002, the Seevers jointly wrote to Carrols, complaining that they were entitled to certain "retroactive pay" for work which they had failed to report on their timesheets. Carrols responded, requesting the specific dates and times for the alleged off-the-clock hours, and stated that it would compensate the Seevers for any off-the-clock hours they had worked. Despite Carrols'

invitation to identify, and be paid for, any uncompensated work, the Seevers never responded to Carrols, but commenced this action shortly thereafter.

## II.     Carrols' Motion for Summary Judgment

Carrols has moved for summary judgment against plaintiffs on their compensation claims pursuant to the FLSA and New York Labor Law, with the exception of plaintiffs' claims concerning alleged nonpayment or underpayment for attendance at orientations and management meetings.

It is well settled that a motion for summary judgment should be granted only where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When ruling on a motion for summary judgment, the court must construe the alleged facts in the light most favorable to the nonmovant. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. 317 at 323. Thus, on those issues on which the nonmoving party bears the ultimate burden of proof, it is his or her responsibility to confront the motion for summary judgment with evidence in admissible form. *Anderson*, 477 U.S. 242 at 256.

### A.     Claims of Roberts and Fleth

Both Heather Roberts and Joseph Fleth have failed or refused to attend or complete their depositions, respond to Carrols' interrogatories, or to otherwise comply with the Court's orders concerning discovery beginning with the Court's September 15, 2003 Order mandating their

participation.  Carrols has filed separate motions to dismiss their claims (Dkt. #114, Dkt. #156).

While plaintiffs' counsel have submitted memoranda opposing those motions, neither Roberts nor

Fleth has attempted to cure their failure to comply with discovery orders, submitted a responding

affidavit or otherwise opposed the motions to dismiss, despite the manifest danger that their failure

to do so could result in dismissal of their claims.  Accordingly, those motions are granted, and the

claims of Heather Roberts and Joseph Fleth are hereby dismissed pursuant to Fed. R. Civ. Proc.

37(b).  *See Krieger v. Texaco, Inc.*, 373 F. Supp. 108, 111 (W.D.N.Y. 1972) (noting the Court's

broad discretion with regard to Rule 37 sanctions for noncompliance with discovery, and ordering

preclusion of damages proof by plaintiffs who failed to respond to interrogatories despite ample

opportunity to do so).[4]

## B.    Plaintiffs' Retaliation Claims

Plaintiffs generally allege that they suffered retaliation for complaining to Carrols about

nonpayment for working off-the-clock.  Dawn Seever testified that she complained to her supervisor,

District Manager Chris Pignone, about not being paid for such work.  Seever claims that she was

subsequently retaliated against, in that she was told by Pignone that the overtime hours she had

submitted were excessive (although it is undisputed that she was paid for them), instructed not to

---

[4]  In the alternative, dismissal would be appropriate pursuant to Fed. R. Civ. Proc. 41(b).
*See generally Levinson v. Primedia Inc.*, 2007 U.S. Dist. LEXIS 58518 at *46-*47 (S.D.N.Y.
2007)(dismissal of plaintiff's claims is appropriate pursuant to Fed. R. Civ. Proc. 41(b) where
plaintiffs failed to comply with discovery orders); *Savage v. UNITE Here*, 2007 U.S. Dist.
LEXIS 39984 at *4-*5 (S.D.N.Y. 2007) (dismissal of plaintiff's FLSA claims is appropriate
pursuant to Fed. R. Civ. Proc. 41(b) where plaintiffs failed to comply with discovery orders or to
cooperate with their own counsel in opposing the defendant's motion to dismiss).  *But see
Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357
U.S. 197 (1958) (resort to the Court's power to dismiss under Fed. R. Civ. Proc. 41(b) is
unnecessary and erroneous where Rule 37(b) may be applied).

work further overtime without authorization, and eventually terminated.  Seever admits, however, that although she was aware of Carrols' formal grievance procedures, she never made any sort of formal complaint to Carrols concerning her claims of uncompensated off-the-clock work.  Seever also makes no allegation that she ever complained to anyone that Carrols' pay practices violated any particular provision of federal or state law.

Similarly, plaintiff Denise McHugh testified that she made informal complaints to her supervisors, and was retaliated against.  However, McHugh makes no claim that she lodged any formal complaints, or any complaints alleging a violation of federal or state law.

It is well settled in this Circuit that the FLSA "limits the [retaliation] cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." *Lambert v. Genesee Hospital*, 10 F.3d 46, 55 (2d Cir. 1993).  *See also Aneja v. Triborough Bridge & Tunnel Auth.*, 2002 U.S. App. LEXIS 9786 (2d Cir. 2002); *Thomas v. S.E.A.L. Security, Inc.*, 2007 U.S. Dist. LEXIS 63841 at *45-*46 (S.D.N.Y. 2007); *Shah v. Wilco Sys., Inc.*, 126 F.Supp.2d 641, 651-652 (S.D.N.Y. 2000).  Furthermore, claims for retaliation under the New York Labor Law require that the employee specifically inform her supervisor that the employer's pay practices violate particular provisions of the New York Labor Law.  *See Nicholls v. The Brookdale Univ. Hospital Med. Ctr.*, 2004 U.S. Dist. LEXIS 12816 (E.D.N.Y. 2004)*; Ellis v. HarperCollins Pub., Inc.*,2000 U.S. Dist. LEXIS 8598 (S.D.N.Y. 2000). Because there is no evidence that any of the plaintiffs ever filed a formal complaint for violations of the FLSA, or complained that Carrols was violating specific provisions of the New York Labor Law, plaintiffs' retaliation claims fail as a matter of law, and must be dismissed.

### C.      Plaintiffs' Claims Concerning Payment for Promotional Training

Plaintiffs also claim that they were not properly compensated for hours that were spent training for promotional positions within the Carrols' Burger King hierarchy, such as promotions from crew member to Team Leader or Shift Supervisor.  Training for such positions includes reviewing videotapes, studying written materials and taking written tests, shadowing other employees and demonstrating practical skills necessary for the desired promotion.

"Time spent attending employer-sponsored lectures, meetings, and training programs is generally considered compensable."  *Chao v. Tradesmen International, Inc.*, 310 F.3d 904, 907 (6th Cir. 2002).  The Department of Labor has, however, provided interpretive regulations defining when an employee's participation in "training" programs is not compensable.[5]  Specifically:

> Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:
>
> (a)      Attendance is outside of the employee's regular working hours;
> (b)      Attendance is in fact voluntary;
> (c)      The course, lecture, or meeting is not directly related to the employee's job; and
> (d)      The employee does not perform any productive work during such attendance.

29 C.F.R. §785.27.

Upon review of these factors, I find that the undisputed evidence establishes these factors, and the time spent by those plaintiffs who engaged in promotional training is therefore not compensable.

---

[5]  The Department of Labor's interpretive guidelines under the FLSA "constitute a body of experience and informed judgment to which courts may properly resort for guidance."  *Farmer v. Ottawa County*, 2000 U.S. App. LEXIS 7224 at *13-*14 (6th Cir. 2000).

First, the undisputed evidence indicates that training was expected to take place outside of the employee's regular working hours.  Although plaintiffs allege that training did take place during the work day, relying upon the testimony of Denise McHugh and Jennifer Bentley that they underwent training tasks "off-the-clock," such testimony does not compel the conclusion that those tasks were performed during their "regular working hours."  To the contrary, McHugh testified that she studied for her promotional position "on [her] own time after working hours," and completed "in-store training over the course of a few months in addition to [her] regular workday."  Although some of the study materials and videos were not permitted to be taken from the store and certain tests needed to be administered there, the mere fact that some training activities took place on the store premises does not indicate that they were performed during the employees' regular hours.  In fact, McHugh testified that she "wasn't allowed" to watch training videos or read training materials during the workday, but would punch out after completing her assigned hours, and return to the store to review them later "on [her] own time."

Plaintiffs also contend that promotional training was not voluntary, relying solely upon Veronica Rodriguez's testimony that her manager continually suggested to her that she consider training for advancement to a Shift Supervisor position.  The Regulations provide that attendance is not voluntary "if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance." 29 C.F.R. §785.28.  Rodriguez, however, testified that despite her manager's telling her daily that she ought to train for a promotion to Shift Supervisor, her manager never suggested that she would be fired if she refused, and Rodriguez knew that she would keep her crew member position

regardless of whether she opted to undergo Shift Supervisor training.  Rodriguez also testified that she voluntarily sought her ultimate promotion to Team Leader, and all other plaintiffs who sought promotions testified that they did so voluntarily.  In short, although Rodriguez may have felt some pressure from her manager's encouragement, there is no evidence that Rodriguez or any other plaintiff was ever "given to understand or led to believe that [her] present working conditions or the continuance of [her] employment would be adversely affected" if she refused to seek a promotion. *Id*.

Plaintiffs also speculatively contend that promotional training was related to the plaintiffs' respective jobs, because the increments of promotional advancement were so minute that "much of what an employee learned in [promotional training] directly or closely related to their job." However, the Regulations are clear that training which is designed to "upgrade" an employee's skills, rather than simply make him more efficient in his present job, is "not considered directly related to the employee's job *although it may incidentally improve his skills in performing his regular work*." 29 C.F.R. §785.31 (emphasis added).

It is undisputed that promotions to Team Leader, Shift Supervisor, and Assistant Manager positions involved the exercise of significantly greater levels of authority and a need for additional expertise on the part of the promoted employee, who would assume new, particularized zones of responsibility for certain aspects of employee management and/or customer service within the store. The mere fact that some portions of Carrols' promotional training program might have overlapped with an employee's responsibilities as a crew member does not support plaintiffs' contention that such training was "directly related" to the employee's regular position. *See Price v. Tampa Electric*

*Company*, 806 F.2d 1551 (11th Cir. 1987) (although employee's promotional training on the operation of solid-state meters may have incidentally benefitted him in performing the duties of his regular position involving traditional meters, his training ultimately qualified him to perform a different function, and is therefore not directly related to his regular position).

Finally, plaintiffs argue that trainees at Carrols are required to perform "productive work" during their training, because tasks such as operating a cash register, using kitchen equipment, preparing food, or cleaning, were at some point demonstrated to employees in a "hands-on" fashion. However, plaintiffs' apparent assumption that productive work would have resulted from these demonstrations is entirely speculative, since there is no evidence that "hands-on" training required any productive output, resulted in food sales, effected actual cleaning of the store, or even took place while the store was open and engaged with actual customers. *See generally Farmer*, 2000 U.S. App. 7224 at *15 ("productive work" may be measured by comparing the duties of the employee while in training to the duties that the employee is normally expected to perform). Indeed, there is no indication that such training obviated the need for any tasks to be performed as usual by those non-trainee staff members to which they were normally assigned, or that Carrols otherwise received the benefit of any productive work from employees who were in training.

Nor does the fact that Carrols' own policies dictated that the company would consider training to be "productive work" merit a different conclusion, since Carrols' written policies are required merely to comply with the FLSA, and are not empowered to expand its requirements. Falkner's and the Seevers' failure to adhere to Carrols' internal policies with respect to compensating

their employees for promotional training does not, standing alone, trigger a violation of the FLSA where those policies were not compelled by the mandates of the statute.

Because there is no evidence whatsoever that plaintiffs' attendance at promotional training activities was required to take place outside of regular working hours, was done involuntarily, was directly related to their regular jobs, or resulted in any productive work, plaintiffs' FLSA claims concerning uncompensated promotional training must be dismissed.

### C.     Plaintiffs' Off-the-Clock Claims

In order to establish their claims that they were not properly compensated for work performed off-the-clock, plaintiffs must demonstrate that they completed work for which Carrols did not properly compensate them. *Anderson v. Mt. Clemens Pottery Company*. *Anderson*, 328 U.S. 680, 686-687 (1946).

Plaintiffs allege that Restaurant Manager Tami Falkner, either directly or through the Seevers, instructed them to perform work, including cleaning and maintenance duties, store closing, and various management responsibilities, before and after punching out, and that as a result, such work went unreported and unpaid.

At the same time, it is undisputed that a number of the plaintiffs had the authority to manually correct their own time records to reflect this work, and did so on a regular basis.  Indeed, the Seevers were reprimanded and ultimately terminated by Carrols due to Carrols' belief that they had falsely inflated their time records by making manual corrections to reflect earlier punch-in times and later punch-out times, and assigned themselves copious hours of unnecessary overtime without authorization, even after being instructed to seek permission before working overtime.  It is also

undisputed that despite its objections to the Seevers' self-reporting of their hours, Carrols paid them for all of their reported time.

Whether viewed individually or collectively, plaintiffs' claims that they worked off-the-clock time for which they were not compensated, and about which Carrols was aware, are supported solely by the testimony of plaintiffs themselves, comprised largely of nebulous recollections of tasks each individual might have performed off-the-clock, which vary dramatically between the plaintiffs and are uncorroborated by any other evidence. Jennifer Bentley does not allege that she ever worked off-the-clock. Margaret "Peggy" Rowland claims that she was not paid for time she spent some months, twice from one to two hours, obtaining supplies from other stores, because she believed it was the Restaurant Manager's practice that such time be unpaid, and she never recorded it or requested a time correction. Rachel Allen testified that although she performed some tasks off-the-clock, she was never asked to do so, never reported the time, and couldn't recall when she had done those tasks. Denise McHugh, who had the authority to enter time corrections, vaguely testified that she was not paid for some of her time corrections or closing duties after she became a Shift Supervisor, but admitted that she could not identify which time corrections or tasks were unpaid and which ones had been paid. Veronica Rodriguez, who also had the authority to enter time corrections for herself and did so, testified that after she became a Team Leader she did not report or correct her time to reflect certain periodic tasks such as cleaning and calibrating the microwave, which took varying amounts of time up to two hours each week. Dawn Seever, who controlled her own time records and those of other employees, and in many cases corrected them to reflect work including off-the-clock tasks, claims that she sometimes did not report certain off-the-clock tasks she performed.

- 15 -

Based on the plaintiffs' inability to provide specific facts establishing when, and for how long, they performed the off-the-clock tasks for which they now seek compensation, the undisputed fact that plaintiffs never reported this work on their timesheets, and the fact that plaintiffs' allegations rest solely upon their own bare recollections, plaintiffs cannot meet their ultimate burden to demonstrate that they performed work for Carrols about which Carrols was aware, and for which they were not compensated.  As such, plaintiffs' claims with respect to uncompensated off-the-clock work must be dismissed.

Plaintiffs argue that they should not be held to their burden to produce any specific facts or evidence of the work for which they were allegedly unpaid, because the allegedly "incomplete" nature of Carrols' time records necessitates application of the lesser burden articulated in *Anderson*. *Anderson*, 328 U.S. 680 at 687-688.  The *Anderson* test holds that where an employer has failed to keep accurate or adequate time records, an employee can satisfy her burden to show that she performed uncompensated work if she produces evidence to demonstrate the amount and extent of such work "as a matter of just and reasonable inference," a burden which can be met by her recollection alone.  The burden then shifts to the employer to produce "evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."  *Id.*

In attempting to apply the *Anderson* test here, plaintiffs overlook a crucial fact: this case does not present the type of factual scenario confronted in *Anderson* and its progeny, where an employer maintains control over the calculation and compensation of time worked and either alters or fails to

keep complete time records as mandated by the FLSA, thereby placing the employee at a marked disadvantage in pursuing an FLSA claim.   Here, it is undisputed that Carrols' record-keeping complied with the requirements of the FLSA and New York Labor Law, and that the plaintiffs' time records were maintained and paid exactly as plaintiffs fashioned them, meaning that any inaccuracies in Carrols' records are *solely due to the plaintiffs' deliberate failure to accurately report the time they worked*.

There is no support for plaintiff's position that the *Anderson* burden of proof should be applied where the time record "deficiencies" alleged by the employee are admittedly and voluntarily self-created.[6]   Indeed, if the Court were to accept plaintiff's argument, any plaintiff wishing to take advantage of the lesser burden of proof offered by *Anderson* need do nothing more than fabricate an admission that he "lied" on his time records, thereby rendering the employer's FLSA-compliant

---

[6] Carrols also urges dismissal of plaintiffs' off-the-clock claims on equitable estoppel grounds. *See, e.g.*, *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 475 F. Supp. 630 (D. Ore. 1979) *aff'd* 646 F.2d 413 (9th Cir. 1981) (holding that plaintiff is estopped from asserting that he worked certain overtime hours, where he failed to accurately report them on his timesheets).   The doctrine of equitable estoppel may be invoked where the enforcement of the rights of one party would work an injustice upon the other due to its justifiable reliance upon the initial party's words or conduct.   *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996).   A party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that it will be relied upon; 2) and the other party reasonably relies upon it; 3) to her detriment. *See Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995).

While Carrols' invocation of the equitable estoppel doctrine is compelling here, where plaintiffs' failure to accurately record their time, Carrols' reliance upon plaintiffs' time reporting, and the resulting detriment to Carrols in the form of this litigation, appear undisputed. Nonetheless, the Court defers to the Second Circuit's well-settled pronouncement that whether equitable estoppel applies in a given case is ultimately a question of fact which cannot be resolved – at least not in the affirmative – on a motion for summary judgment.   *Kosakow v. New Rochelle Radiology Associates*, 274 F.3d 706, 725 (2d Cir. 2001); *Bennett v. United States Lines, Inc.*, 64 F.3d 62, 65 (2d Cir. 1995).

records useless and the employer, through no fault of its own, defenseless to refute the employee's "recollection."

Plaintiffs attempt to defend their failure to record all of their work on their time sheets by alleging that although they were aware or had been trained that Carrols' written policies require payment for all time worked, Restaurant Manager Tami Falkner had instructed some of them to omit certain tasks from their reported work time.

Whether Falkner did so is disputed by some of the plaintiffs. Dawn Seever, Denise McHugh and Veronica Rodriguez – incidentally, the three plaintiffs who exercised the greatest degree of unilateral control over their time records – each testified that Falkner told them to perform some tasks off-the-clock, and not to report that time on their timesheets. Conversely, Jennifer Bentley and Rachel Allen testified that they were not told to work off-the-clock. Falkner testified that she did not instruct any of the plaintiffs to work off-the-clock, but to complete their duties during their regularly scheduled shifts.

Notwithstanding the plaintiffs' conflicting testimony, the question of whether Falkner instructed Dawn Seever, Denise McHugh and Veronica Rodriguez not to record all of their time is ultimately immaterial, since there is no evidence that her alleged "instruction" ever prevented any of the plaintiffs from claiming, and being paid for, all of the time they worked. It is undisputed that, whatever Falkner may or may not have said, Seever, McHugh and Rodriguez all had the authority to make time corrections to reflect such work, and/or admitted that they often did so.

Furthermore, even assuming *arguendo* that plaintiffs' allegations concerning Falkner were sufficient to create a presumption that the alleged deficiencies in plaintiffs' time records are

attributable to Carrols and should trigger the *Anderson* burden-shifting analysis, I find that Carrols has produced sufficient evidence to negate the inference that the plaintiffs performed work off-the-clock, including its own written policies and training materials clearly directing that all time worked is to be compensated, plaintiffs' complete time records, which are in compliance with the relevant portions of the FLSA and state law, plaintiffs' own testimony concerning their knowledge that it was Carrols' policy to pay for off-the-clock work, the plaintiffs' individual authority to request and/or make time corrections for off-the-clock work, and the fact that time corrections for off-the-clock work were in fact frequently made by plaintiffs and were paid to them by Carrols without question. *Anderson*, 328 U.S. 680 at 687-688.

Plaintiffs have made no attempt to rebut Carrols' evidence concerning their compensation for the off-the-clock hours they reported, or to provide specific facts explaining how, whether and to what extent Falkner's alleged instruction not to record off-the-clock tasks prevented them from reporting and getting paid for those tasks, particularly since those plaintiffs who allege having been so instructed did not follow that instruction as a matter of course, and reported and were paid for at least some of their off-the-clock work.

After reviewing all the evidence, it appears that the Seevers, who, in part, occasioned this lawsuit, were nothing more than disgruntled former employees who were fired for serious breaches of Carrols' policy and for falsifying their own time records.  Much of what occurred at the restaurant was their doing.

As such, I find that even if plaintiffs were subject to the relaxed *Anderson* standard, plaintiffs cannot rebut Carrols' evidentiary showing negating the "just and reasonable inference" that they

worked uncompensated off-the-clock hours, and their claims relating to work allegedly performed off-the-clock work must be dismissed.

### E.      Plaintiffs' Claims for Compensatory and Statutory Liquidated Damages

In July 2005, defendants' counsel tendered payment offers to Denise McHugh, Jennifer Bentley, Rachel Allen and Veronica Rodriguez.  The proffered amounts were calculated by making a rough determination of the amount of pay plaintiffs were claiming was due them for orientation, managers meetings, unpaid work time and even promotional training time, construing all doubts in favor of the plaintiffs, and then doubling the resulting figure, in order to ensure that each plaintiff would be wholly compensated.

Plaintiffs have not disputed Carrols' calculations, or otherwise challenged the proffers of payment as inadequate to cover plaintiffs' compensatory damages.  Nonetheless, plaintiffs have refused to accept Carrols' attempt at settlement and Carrols' checks to them have not been cashed.

Carrols urges that these offers have, as a matter of law, rendered all of the plaintiffs' claims, or at least those of Denise McHugh, Jennifer Bentley, Rachel Allen and Veronica Rodriguez, moot, and deprived the Court of subject matter jurisdiction over an actual case and controversy.[7]  Plaintiffs

---

[7] It is true that in some FLSA collective action cases in this circuit, district courts have held that a defendant's Offer of Judgment for a plaintiff's full damages, even if rejected, renders the case moot and subject to dismissal.  *See e.g., Darboe v. Goodwill Industries of Greater NY & Northern NJ, Inc.*, 2007 U.S. Dist. LEXIS 28090 at *7-*8 (E.D.N.Y. 2007); *Ward v. Bank of New York*, 455 F. Supp. 2d 262, 267 (S.D.N.Y. 2006).  However, defendants do not allege that they have made Offers of Judgment here.  Moreover, to the extent that case law concerning Offers of Judgment is instructive, dismissal on mootness grounds would not be appropriate, since defendant's offer would not satisfy "all damages for all plaintiffs."  *Ward*, 455 F. Supp. 262 at 267.

argue that Carrol's offers do not moot their claims, because the offers don't include reasonable attorneys and costs, and as such, may not fully compensate the plaintiffs.

Because the tenders of payment were not made as Offers of Judgment pursuant to Fed. R. Civ. Proc. 68, they are, in the Court's view, simply a settlement overture which may or may not represent full compensation to plaintiffs for their claims demanding compensatory and statutory damages, attorneys fees and costs.  Because the sufficiency of those offers is disputed, Carrol's motion to dismiss all claims of those plaintiffs to whom offers were made must be denied.

### F.    Plaintiffs' Motion for Conditional Certification

Plaintiffs have moved for conditional certification of an FLSA collective action, to include:

> all individuals nationwide who are or were employed by Carrols Corporation, and all Burger King franchises owned and operated by Carrols Corporation, from November 12, 1999 through the present at any location and who were classified as nonexempt employees for purposes of the FLSA's mandatory overtime requirement and were not compensated for all hours worked, and/or were not paid overtime at the rate of one-and-a-half times their regular rate of pay when such employee worked over 40 hours in a week.

At the notice and conditional certification stage, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan . . ."  *Scholtisek v. The Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005), *quoting Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995).  In so doing, plaintiffs must make a "modest factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Scholtisek*, 229 F.R.D. 381 at 387, *quoting Hofmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

Plaintiffs have conducted extensive discovery with respect to wage and hour issues at Unit 416, where the plaintiffs were employed, and have advertised the action, solicited additional plaintiffs, interviewed a number of Burger King employees, and obtained affidavits from employees at a number of other Carrols-owned Burger King stores.

Initially, there is no evidence that Tami Falkner's allegedly illegal "internal policies" at Unit 416 were part of a uniform policy common to other stores.  Although Falkner testified that she misunderstood several of Carrols' policies concerning payment for orientation, off-the-clock work and training time, she does not identify the reasons for that misunderstanding.  It is undisputed that Falkner's interpretation conflicted with Carrols' written policies, and there is no evidence to substantiate plaintiffs' suggestion that her mistaken beliefs resulted from any training or misinformation by Carrols itself.

Nor do the affidavits submitted by plaintiffs from employees outside of Unit 416 suggest that any of the FLSA violations spearheaded by Falkner and the Seevers were part of a generalized, company-wide policy.  Excepting any evidence relating to plaintiffs' claims concerning promotional training, which are disposed of above, the affidavits relied upon by plaintiffs suggest only that on some unspecified occasions, some employees at other stores were allegedly not permitted to punch in or perform work unless their assistance was actually needed, or else were required to wait in the store after punching out for their manager to complete closing duties.  The "not permitted to punch in" allegation does not correspond with any of plaintiffs' claims and therefore provides no basis for a finding of commonality between the plaintiffs' claims and those of the putative additional class members.  Moreover, the affidavits are

incomprehensibly vague as to the material circumstances surrounding these particular alleged policies, such as whether these acts occurred during the time period relevant to this action, and whether employees who were told to punch in at a later time were free to leave in the meantime. Given these omissions, it is impossible for the Court to determine as a matter of law whether the activities the affiants describe were even compensable, let alone relevant to the instant plaintiffs' claims.  As such, plaintiffs' affidavits do little to advance their modest burden to show that they and the putative plaintiffs were all victims of a common policy that violated the FLSA.

Despite significant discovery spanning the course of several years, there is little indication in the record that the FLSA violations alleged by plaintiffs were anything other than unilateral acts by a few "rogue" managers at Unit 416, abusing their authority  at a failing store by refusing to compensate their underlings in the manner prescribed by Carrol's written policies, even while claiming unauthorized overtime and off-the-clock compensation for themselves.  Indeed, this was the very reason Carrols terminated Dawn and Deborah Seever's employment.

The only clear evidence that any similar violations occurred at other locations is provided in the affidavit of former employee Amber Smith, who testified that after she became a manager at a Pennsylvania Burger King store, she attended managers' meetings and performed tasks such as decorating the store, off-the-clock.  Given the breadth of the proposed class, estimated to number over one hundred thousand (100,000) persons, such isolated testimony is insufficient to meet even plaintiffs' minimal burden to demonstrate the existence of an FLSA-violative policy common to all of the nearly three-hundred-and-fifty Burger King stores owned and operated by Carrols.

Accordingly, plaintiffs' motion for conditional class certification and notice (Dkt. #126) is denied.

## CONCLUSION

Carrols' motion to dismiss all claims asserted by plaintiffs Heather Roberts and Joseph Fleth is granted, and their claims are dismissed, with prejudice (Dkt. #114, Dkt. #156).  Carrols' motion for summary judgment (Dkt. #100) is also granted, in part, and the claims of plaintiffs Dawn Seever, Deborah Seever, Veronica Rodriguez, Margaret Rowland, Jennifer Bentley-George, Rachel Allen, and Denise McHugh pursuant to the FLSA and New York Labor Law are dismissed, with prejudice, with the exception of those claims concerning time spent attending orientation activities and managers' meetings.  Plaintiffs' motion for conditional certification and class notice (Dkt. #126) is denied.  Consequently, plaintiffs' motions for class-related discovery (Dkt. #125), Carrols' motions for disqualification of plaintiffs' counsel and discovery sanctions (Dkt. ##135, 137), and Carrols' motion to strike (Dkt. #136), are denied as moot.

The parties are further instructed to review the documentary evidence concerning time spent by the plaintiffs to attend orientations and manager's meetings, and to confer in good faith concerning the reasonable calculation and settlement of those claims.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      December 17, 2007.

- 24 -